**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. <u>20-20129-MIDDLEBROOKS</u>**

**UNITED STATES OF AMERICA**

**vs.**

**HECTOR ALEJANDRO CABRERA FUENTES,**

<b>Defendant</b>

_____/

**<u>DEFENDANT HECTOR ALEJANDRO CABRERA FUENTES'</u>**
**<u>SENTENCING MEMORANDUM</u>**

Defendant Dr. Hector Alejandro Cabrera Fuentes submits the following in connection with the Sentencing Hearing presently scheduled for June 21, 2022:

**<u>INTRODUCTION</u>**

Dr. Cabrera's career, as a world-renowned biochemist and cardiovascular scientist, is only surpassed by his charitable work supporting the people of his hometown Oaxaca, Mexico in a myriad of ways, as discussed below. Yet, despite his accomplishments, Dr. Cabrera acknowledges he committed the crime for which he is to be sentenced, has already paid dearly, and hopes this Court accepts his remorse and imposes a fair sentence.

**<u>DR. CABRERA'S HISTORY</u>**

Dr. Cabrera earned his bachelor's degree in microbiology and a master's degree in molecular biology at Kazan Federal University in Kazan, Russia. Thereafter Dr. Cabrera earned a doctorate in microbiology, biochemistry and human biology from the University of Guissen in Germany. He then joined Duke-NUS in Singapore as a postdoctoral fellow. During his

1

fellowship at Duke-NUS, he was awarded the prestigious position of assistant professor and research fellow.

At the time of his arrest, Dr. Cabrera was a Senior Research Fellow at the National Heart Center in Singapore focusing on molecular cardiology, a research consultant in genetic testing at OME Wellness in Israel, and a director at the Biotechnology Center of Technologico in Monterrey in Mexico relating to vaccines and microbiology.

In addition to being a brilliant scientist, Dr. Cabrera has provided time and energy to the people in his community in Oaxaca, Mexico. He started a foundation titled "Por Oaxaca más Investigadores" which translates to "More Scientific Researchers for Oaxaca" to nurture young adults through fellowships and research collaborations. Since then, Dr. Cabrera has worked tirelessly to promote scientific education for the young people of Oaxaca, sponsoring many young scientists to work with him in laboratories in Germany and Singapore. In more recent years, he succeeded in developing skin treatments for those suffering from severe skin lesions in the extremities due to chronic diabetes in Mexico.

Recently, one of the strongest earthquakes in a hundred years hit Oaxaca. Dr. Cabrera sprung to action, setting up ways to send donations and help, plus organizing efforts to build safer houses in the region. He even traveled to one of the most affected towns there to help set up rebuilding efforts.

Dr. Cabrera's dedication did not cease with incarceration. As reflected in the Work Performance Rating by the Federal Bureau of Prisons, attached as Exhibit A, Dr. Cabrera has served as a Main Floor Orderly for over a year. He cleans, paints, and assists with the "orderly running of the unit," receiving an "outstanding" rating in every category. He is described as a "very hard worker [giving] 100 percent all the time."

2

Equally as important as the foregoing, Dr. Cabrera is the proud father of four young children, whom he has not seen since his incarceration because they do not reside in this country. Dr. Cabrera remains extremely close to his parents, siblings, and children by regular telephonic communication, with some limited financial support to his children and their mothers.

<u>LETTERS BY FRIENDS AND FAMILY</u>

The outpouring of support has been overwhelming, as reflected in the plethora of letters from family and friends to this Court. These thoughtful and insightful letters that are excerpted below are attached as Composite Exhibit B:

- William A. Boisvert, Ph.D., Professor of Medicine, John A. Burns School of Medicine, Center for Cardiovascular Research, University of Hawai'I, Manoa:   Dr. Cabrera "proved himself to be a hard-working individual with strict work ethics. I saw him on multiple occasions working diligently into the wee hours of the night. He was extremely well read and up to date on the literature pertaining to his research and beyond.  Over the years I have watched Dr Cabrera blossom into a thoughtful and creative scientist capable of taking on the most challenging of research projects. . . . In addition to being a brilliant scientist, Dr Cabrera is a compassionate person who has given a tremendous amount of his time and energy to the people in his community in Oaxaca, Mexico. He has worked tirelessly to promote scientific education for the young people of Oaxaca, even taking on many young scientists to work in his laboratory in Germany and Singapore."

- Luis Roberto Flores Castillo, Associate Professor in the Department of Physics of The Chinese University of Hong Kong: "I was impressed by [Dr. Cabrera's] academic and scientific achievements, especially at such an early stage of his career, but I think his work, his concern, and his care for the well-being of others outshine those achievements. . . . I definitely can attest to his passion, commitment and dedication to help those in need, and especially those in poor regions of his native state of Oaxaca, Mexico. . . . When calamities strike, or to devise new ways to improve everyone's living conditions, few people are capable, proactive, and, organized enough to act, and, furthermore, to motivate and mobilize others to help. I think it is everyone's loss that, precisely in a time when there is such a dire need for medical work and research, Hector is kept away from helping."

- Lucilla Fuentes Cruz, mother of Dr. Cabrera: "To my son: The best and smartest decision you could have made was leaving at an early age and pursuing your dreams, leaving me a valuable lesson. I now pray to God that you keep flying and pursuing what you love and

to embrace that. continue contributing his knowledge to humanity."

- Alexis Cabrera Fuentes – sister of Dr. Cabrera: "[My brother] has always been supportive to our family and has kept us together as one. As my big brother, he has taken the responsibility of taking care of us financially, and emotionally. Supporting our family since the beginning and I will be forever thankful to him for that."

- Nancy Guie Niza Cabrera Fuentes – sister of Dr. Cabrera: "Since [my brother] was young, he has shown as an engaged and committed person to what he does and whom he loves. He has shown a protective instinct with his family and aims for us to stay together as a family, despite the distance. Hector was born to be a remarkable human being, to help people and to give his very best on everything he does. My mother taught him that he should never forget about where he came from and where he was going to, and he has never forgotten that. When he started to have capability to help, he started to help kids providing opportunities for them to finish their school. He stablished connections with colleges for science students to be developed in the science filed. He has helped his hometown tremendously providing cultural opportunities, such as a Marimba Perlas and diamantes group, that he developed, and they are very grateful to have had him as their mentor and helper."

- Hector Cabrera Guzman, father of Dr. Cabrera: "[My son] always supported his peers, his caring nature and personality allow him to work well with others, he was always an example of perseverance, optimism, truly demonstrated a growth mindset, he believes passionately in social progress and working for the common good, and to this day he continues to be a source of pride to our family and those close to him."

  o As a family, we always taught him to be respectful, however his humbleness and caring personality is innate on him, and of that his town is a witness, positive reviews have flooded in from peer, friends, students, and his brother and sister. As his parents we have always been and will continue to feel proud.

  o He has always been there in the distance, taking care of what he loves the most, his family. Nowadays, he still does, he calls us every day, full of hope, optimism, and motives us not give up on him. We know that he is the pilar of our family, we root for him all the way, and we love him.

- Luis Daniel Beltrán Girón, President Red Global MX Nodo Zacatecas, a non-profit relief organization: "We as the Nodo Zacatecas, from the Red Global de Mexicanos en el Exterior, joined forces in 2017 with the Chapter Singapore, whose president is Dr. Cabrera. And we worked in the reconstruction of Oaxaca with a project of earthquake-resistant houses, without a doubt Dr. Héctor Cabrera was a key piece to be able to carry out this project thanks to his generosity and his altruistic spirit to help his Oaxacan brothers at critical moments."

- Yoel Matus, student: "I am part of the Marimba Perlas and Diamantes, currently studying music in the UNICACH college. I am very grateful to [Dr.] Cabrera and his project,

because thanks to him I have had the opportunity to achieve my goals in life."

- Clarisa Luis Pradillo, student: "I met scientist [Dr.] Cabrera as someone humble, committed to his family, work, and society. [He]'s a very supportive person that has taught me how to accomplish my goals and he always has the right words to say, to make you feel that you are able to do anything you want and put your mind to it. I have no other words to say but thank you to [Dr. Cabrera] for giving me support, and the opportunity that he has given me. We are tremendously thankful to him."

- Klaus T. Preissner, Ph.D., Professor em. for Biochemistry & Pathobiochemistry, Justus-Liebig-Univsitat, Giessen, Germany: "The results of his outstanding research had a major (also society-related) impact on our understanding of cardiovascular diseases (such as atherosclerosis), associated with new medical approaches to describe novel therapeutic regimen for cardio-protection in patients. The success of his dedicated research activities in my group as well as in cooperative projects was reflected by more than 30 high ranked joint scientific publications (out of more than 50 meanwhile) and the numerous scientific awards he received so far. . . . [A]s well as organized the exchange of PhD students from Mexico, Venezuela as well as from Kazan to work in my research group or at the Max-Planck-Institute for Heart & Lung Research in nearby Bad Nauheim (Germany). This has led to a vivid exchange of young inves-tigators and new ideas across continents. Without his altruistic engagement these international connec-tions wouldn´t have been possible."

- Victor L. Serebruany, M.D., Ph.D. Ass. Prof. Med, Neurology, Johns Hopkins University: "As a colleague of mine [Dr. Cabrera] didn't miss a beat in getting to work, creating rapport with students and junior faculty, preparing and delivering thoughtful and rigorous research and instantly becoming a trusted and needed member of the World Cardiology Expert Circle. [Dr. Cabrera]'s naturally positive and approachable demeanor make him an invaluable resource in a multicultural community. His open spirit and infectious cheerfulness and kindness very quickly made him a sought-after confidante for so many of us. [Dr. Cabrera] is gifted with a natural disposition to create close yet professional relationships with various people."

- Yamileth Toledo Ulloa, group coordinator for Marimba Perlas Y Diamantes, a charitable organization assisting children: "A group of children was conformed, which had the opportunity to travel to France, Switzerland, Belgium, and Germany to demonstrate our culture. [Dr. Cabrera] did the impossible to get all the permissions so we could travel. Every time he went to his hometown, he would visit our group and encourage them to keep pursuing their goals, and to be disciplined and committed just like he is."

## <u>THE OFFENSE AND THE PLEA AGREEMENT</u>

Dr. Cabrera was charged by Indictment on February 15, 2020, D.E 10, with a violation of 18 US.C. § 951, with knowingly acting within the United States as an agent of a foreign government without prior notification to the Attorney General. On February 16, 2022, pursuant to a Plea

Agreement, D.E. 45, Dr. Cabrera pled guilty. Pursuant paragraph 6 of the Plea Agreement, Dr. Cabrera and the Government agree to jointly recommend that the Court impose a sentence of 4 years' incarceration.

As noted in the Plea Agreement and in the Presentence Investigation Report, D.E. 50, the United States Sentencing Guidelines do not specify a guideline range for a violation of § 951. Where the Guidelines do not expressly specify a Guideline range, the Court should "apply the most analogous guideline. If there is not a sufficient analogous Guideline, the provisions of 18 U.S.C. § 3553 shall control, except that any Guidelines and policy statements that can be applied meaningfully in the absence of a Chapter Two offense guideline shall remain applicable." USSG § 2X5.1.

## THE LAW

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate . . . the crime and the punishment to ensue." *Koon v. United States,* 518 U.S. 81, 113 (1996). Like every defendant, Dr. Cabrera is entitled to a fair and just sentence that considers the totality of his individual circumstances. *Kimbrough v. United States,* 552 U.S. 85, 101 (2007) (The overarching command of Section 3553(a) is the Parsimony Clause that "instruct[s] district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing. . . .); *United States  v. Jones,* 460 F.3d 191, 195 (2d Cir. 2006) (Judges may give "consideration [to] the judge's own sense of what is a fair and just sentence under all the circumstances.").

A court must impose a sentence "sufficient, *but not greater than necessary,"* to comply with the purposes of punishment. 18 U.S.C. § 3553(a) (emphasis added). In particular, Section 3553(a) provides that in determining the sentence to be imposed, a court shall consider, among

other things: the nature and circumstances of the offense and the history and characteristics of the defendant, §3553(a)(1); the purposes of sentencing, §3553(a)(2); the kinds of sentences available, §3553(a)(3); the kinds of sentence and sentencing range recommended by the Guidelines and any pertinent policy statements issued by the Commission, §3553(a)(4) and (5); the need to avoid unwarranted sentence disparity, §3553(a)(6); and the need to provide restitution to victims, §3553(a)(7).

A court is not limited by the information it may consider at sentencing concerning the background, character, and conduct of a person convicted of an offense. *Irizarry v. United States*, 553 U.S. 708, 715 (2008) ("[T]here is no longer a limit ... on the variances from the Guidelines ranges that a district court may find justified under the sentencing factors set forth in[§ 3553(a)]."); *United States v. Hooks*, 551 F.3d 1205, 1217 (10th Cir. 2009) (citation omitted) ("With few limitations, a court has almost unlimited discretion in determining what information it will hear and rely upon in imposing [a] sentence under the advisory sentencing guidelines.").

### Family Ties

As noted above, Dr. Cabrera has compelling ties to his family, his business colleagues, and his community in Oaxaca. Family ties "are pertinent to crafting an appropriate sentence." *United States v. Nellum,* No. 2:04-CR-30, 2005 U.S. District LEXIS 1568, at *4 (N.D. Ind. Feb. 3, 2005). *See also United States v. Trader*, 981 F.3d 961, 971 (11th Cir. 2020) ("To be sure, Trader's family ties and cooperation with authorities are mitigating factors[.]"); *United States v. Benkahla,* 501 F. Supp. 2d 748, 760 (E.D. Va. 2007) (awarding downward variance based on, among other things, defendant's "strong, positive relationships with friends, family, and the community"); *United States v. Harding,* No. 05 Cr. 1285- 02 (RWS), 2006 U.S. Dist. LEXIS 71423, at *14 (S.D.N.Y. Sept. 27, 2006) (awarding a non-Guidelines sentence, taking "note of

the significant network" ready to support defendant); *United States v. Myers*, 353 F. Supp. 2d 1026, 1031 (S.D. Iowa 2005) (imposing non-Guidelines sentence where defendant had "been a steadfast and guiding presence in his family's life").

### Lack of Criminal History and Dangerousness

Dr. Cabrera has no criminal history. Highly relevant in sentencing is a defendant's lack of criminal history. *See United States v. Autery*, 555 F.3d 864, 874 (9th Cir. 2009) (Because "Criminal History Level I did not fully account for [defendant's] complete lack of criminal history, considering it as a mitigating factor was not redundant or improper."); *United States v. Duhon*, 541 F.3d 391 (5th Cir. 2008) (The court affirmed a probationary sentence where the Guideline range was 27-33 months, noting the defendant had no criminal history, posed no threat to the public, and would benefit most from psychological treatment.); *United States v. Morales*, 972 F.2d 1007, 1011 (9th Cir. 1992) ("A district court may depart below Criminal History Category I in instances where the court concludes that the offense of conviction is a single aberrant act of criminal behavior."). Moreover, a sentencing court may also consider "exceptional" good works for the community. *United States v. Cooper*, 394 F.3d 172, 178 (3d Cir. 2005).

### The Goals of Sentencing Vis á Vis the Offense

The Court must impose a sentence not greater than necessary to provide adequate deterrence. 18 U.S.C. § 3553(a)(3). Incarceration, by disrupting employment, reducing prospects of future employment, weakening family ties, and exposing less serious offenders to more serious offenders, leads to increased recidivism. Lynne M. Vieraitis *et al., The Criminogenic Effects of Imprisonment: Evidence from State Panel Data 1974-2002,* Criminology & Pub. Pol'y 589, 591-593 (2007) ("[I]mprisonment causes harm to prisoners," isolating them from families

8

and friends, making it difficult to successfully reenter society, and "reinforc[ing] criminal identities" through contacts with other criminals.); Miles D. Harer, *Do Guideline Sentences for Low-Risk Drug TraffickersAchieve Their Stated Purposes?,* 1994 WL 5026777, Fed. Sent. R. 22, 23 (1994) ("[T]he alienation, deteriorated family relations, and reduced employment prospects resulting from the extremely long removal from family and regular employment may well increase recidivism."). Thus, community treatment programs are more effective in reducing recidivism than prison treatment programs. *Washington State Institute for Public Policy, Evidence-Based Public Policy Options to Reduce Future Prison Construction, Criminal Justice Costs, and Crime Rates,* at p. 9 (October 2006).[1]

## **CONCLUSION**

Dr. Cabrera is extremely remorseful for his actions that gave rise to the present offense. He hopes to be released from incarceration as soon as possible to allow him the opportunity to contribute to society by providing emotional and financial support for his family and by continuing his charitable and scientific work.

Dated this 13th day of June 2022.

s/ Amber Donner
Amber Donner, Esq.
Florida Bar No. 600032
Ronald Gainor
Florida Bar No. 606960
GAINOR & DONNER
3250 Mary Street Suite 405
Miami, Florida 33133
O: 305-537-2000
C: 303-359-1314
F: 305-537-2001
Email: amber_donner@hotmail.com

---

[1] Available at https://www.wsipp.wa.gov/ReportFile/952/Wsipp_Evidence-Based-Public-Policy-Options-to-Reduce-Future-Prison-Construction-Criminal-Justice-Costs-and-Crime-Rates_Full-Report.pdf.

*Counsel for Hector Alejandro Cabrera*
*Fuentes*

## CERTIFICATE  OF SERVICE

   I hereby certify that on this 13th day of June 2022, I electronically filed the foregoing Memorandum with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to all interested parties.

<u>s/ Amber Donner</u>